## KRAUSE & MANAGAN, Inc., v. TRACY.
### No. 1344.

Court of Appeal of Louisiana.
First Circuit.
June 11, 1934.

Lewis & Williamson, of Lake Charles, for appellant.

Pujo, Bell & Hardin, of Lake Charles, for appellee.

ELLIOTT, Judge.

Krause & Managan, Inc., brought suit against L. C. Tracy for $487.32 on account alleged to be based on a verbal contract for lumber and material used in the erection and equipment of a house belonging to said Tracy situated on lot 9, block Z, of the town of Sulphur, La.

The plaintiff claims the existence of a privilege in its favor on the lot as furnisher of material used in the erection of the building thereon. It prays for judgment against Tracy for the amount of its account with recognition of a privilege in its favor on the building and lot of ground on which it is situated.

Tracy, for answer, denies owing the amount claimed. He alleges that plaintiff, through its agent, agreed to furnish all of the material and lumber used in building the house for $268, to be paid for with shares of stock in the Jefferson Building & Investment Company, of Beaumont, Tex. He tendered the stock to defendant as part of his answer; prayed that the stock be accepted as payment and that plaintiff's demand for judgment against him be refused and rejected.

There was judgment in favor of the plaintiff as prayed for. Defendant has appealed.

The case depends on the credibility of certain witnesses, mainly that of plaintiff's agent and general manager, at Sulphur, La., and of the defendant himself.

According to plaintiff's agent and general manager, all the items of lumber, nails, doors, etc., as indicated on the account sued on were delivered to defendant pursuant to defendant's orders received through his carpenters employed by him in the erection and equipment of the building and went into its erection and equipment; that the prices charged are in conformity with the bid which plaintiff put in at the time it was awarded the contract for furnishing the material.

The evidence shows that the defendant sought bids from the plaintiff and from two other parties engaged in furnishing building material, and that, after considering the bids, he accepted that of the plaintiff. But plaintiff's bid was based on a statement of the material which the defendant submitted to the bidders, and which purported to call for all material that would be needed in the erection of the house. This statement was prepared by Arceneaux, defendant's carpenter employed to build the house. Plaintiff undertook to furnish all the material called for on this statement for $238. Afterwards, defendant desired to enlarge the building, and plaintiff undertook to furnish certain other material for a price not exceeding $30, a total of $268. But, after the construction got under way and before it was completed, the material called for on the statement was found to be not enough, and more was ordered and used in the work; the plaintiff claims that the additional material was charged for at the same price as that called for on the estimate prepared by Arceneaux.

The estimate prepared by Arceneaux was offered in evidence, and the account sued on and the estimate submitted to and acted on by the bidders, compared, shows that the account sued on calls for about twice as much material as was at first estimated would be needed. The evidence shows that all the material charged on the account sued on went into the erection and equipment of the house.

Tracy does not claim that the prices charged for the items called for by the account sued on are too high nor that any of the material used in the erection of the house was not ordered by his carpenters, and pursuant to his, at least, tacit direction. But his contention is that it mattered not that it took twice as much material as was at first supposed necessary to build and equip the house; plaintiff's contract with him was to furnish all the material for $268.

Defendant produced two witnesses who claim that they were standing near defendant and plaintiff's manager at the time when they had a conversation about the price of the material going into the erection of the house. One of them heard plaintiff's manager tell defendant that he would furnish the material for $238, which was the amount of the estimates on which plaintiff had based its bid, and before any addition had been made. The other one heard plaintiff's manager say: "I am putting up the building for $238.00." These witnesses do not appear to have any interest in the result. The exact length of time that elapsed after hearing plaintiff's manager make these statements, before they were called as witnesses, cannot be stated, but we estimate that it must have been five or six months. As showing the weakness of such

testimony, in the appreciation of law writers, we quote from Starkie on Evidence, vol. 1, subject, Witness, § 57, pp. 460 and 461: "Such considerations operate strongly where detailed evidence is given of oral declarations after the lapse of a considerable interval of time. Every man's experience teaches him how fallible and treacherous the human memory in such cases is." See, also, Greenleaf, vol. 1, subject, Admissions, § 200, p. 229; Jones on Evidence, subject, Admissions, § 295, p. 370; Moore on Facts, vol. 2, subject, Memory, § 873, p. 1005 et seq.

It was impossible for plaintiff's manager to have entered into any agreement of the kind unless he contemplated either raising the price of the material about twice that stipulated in the bid, else subjecting his employer to severe loss. The evidence indicates that he had no authority to do anything so unusual. It would have almost certainly gotten him into trouble with his employer, without any advantage to himself.

We therefore think that the conversation which the witness heard either had reference to the original estimate prepared by Arceneaux, else they did not hear all that was said.

Plaintiff's manager, Mr. Spears, testified that plaintiff furnished all the material called for by the original estimates prepared by Arceneaux at the price contemplated, and, after all that the estimate called for had been furnished, there came calls and orders from the carpenter at work on the building for additional material in order to complete it as designed and planned; that the additional orders were filled, and, when all had been delivered that was called for, the amount of the account was $487.32. Defendant does not disavow the authority of his carpenter to order material as needed. Spears denies that he agreed to furnish all the material needed and used in the building for $268, and we feel satisfied that he did not and that his testimony is true.

The lower court held, and we think justly and properly, that defendant owed the full amount sued for, and as indicated by the account sued on, annexed to and made part of the petition.

■ The next question is defendant's contention that plaintiff's agent and general manager agreed to take stock in the Jefferson Building & Investment Company in payment of the $268.

We have considered all the testimony adduced on this subject. We understand defendant to claim that Mr. Arceneaux informed him that Mr. Spears would accept the stock in payment for the material. Mr. Arceneaux was not called as a witness. We have taken into account statements of defendant's counsel on the trial, that he sought to procure his testimony but was unable to do so. Just what Mr. Arceneaux would have said had he been produced as a witness is a matter for conjecture.

Spears testifies that the defendant mentioned to him about taking this stock in payment; that he replied he would see about it, and spoke of the matter to Mr. Managan, his superior; that Mr. Managan never authorized him to take the stock; and that he never so informed the defendant.

The testimony of the defendant on the subject may be looked on as a contradiction of the testimony of Spears. But, after having thought over the matter, we conclude that the evidence adduced by defendant is not sufficient to show that Spears, acting for the plaintiff, agreed to take this stock. Such was the first conclusion of the trial judge, who had the witnesses before him and perhaps knew the men. After having rendered judgment in favor of the plaintiff as prayed for, he granted defendant a rehearing, and upon rehearing changed his first conclusion and held that plaintiff had agreed to take the stock. He then granted plaintiff a new trial on this question, heard some additional testimony, and then rendered judgment reinstating his first judgment, holding firmly with the plaintiff pursuant to his first conclusion.

We are satisfied that the case has been correctly decided.

Judgment affirmed; defendant-appellant to pay the cost in both courts.